UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN RAMDATH,

       Plaintiff,

   -against-         1:11-CV-0395 (LEK/CFH)

JOHN FAVATA; *et al.*,

       Defendants.

_____

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

*Pro se* Plaintiff John Ramdath ("Plaintiff") commenced this action on April 11, 2011,

alleging various claims against a host of defendants.  Dkt. No. 1 ("Complaint"); <u>see also</u> Dkt. No. 50

("Second Amended Complaint").  Presently before the Court are Motions for summary judgment

filed by Defendants John Murphy ("Murphy"), Robin Tassinari ("Tassinari"), and Richard Breslow

("Breslow") (collectively, the "State Defendants"), and by Defendant John Favata ("Favata").  Dkt.

Nos. 81 ("Favata Motion"); 83 ("State Defendants Motion").  For the following reasons, the

Motions are granted and the case is dismissed.

## II. BACKGROUND

### A.  Favata

#### *1.  April 2008 Incident*

On April 16, 2008, Plaintiff was patronizing a Wendy's restaurant on Erie Boulevard in

Schenectady.  Dkt. No. 81-19 ("Favata SMF") ¶ 2.  Favata, a Schenectady Police Officer, was

dispatched to the restaurant after employees notified the Schenectady Police that a customer was

acting erratically.  <u>Id.</u> ¶¶ 3-4.  According to Favata, Plaintiff exhibited erratic behavior when

approached. Id. ¶ 6. Plaintiff would not respond to Favata's questions and kept repeating himself. Id. Plaintiff then walked to the rear of the building and began speaking to customers in the drive-thru line. Id. ¶ 7. At one point, Favata observed Plaintiff asking a drive-thru customer if he could buy the customer's car. Id. During the several minutes that Favata questioned Plaintiff, Plaintiff repeatedly refused to give his name, and spoke to Favata in a bizarre and disjointed manner. Id. ¶ 8; Dkt. No. 81-11 ("Favata Affidavit") ¶ 14. Favata advised Plaintiff that his behavior was concerning and inquired as to Plaintiff's well-being. Favata Aff. ¶ 15. Favata told Plaintiff that he could take him to the hospital, and Plaintiff immediately said that he would like to go there. SMF ¶ 9; Favata Aff. ¶ 15-16; see also id. Ex. B ("Recording"). Favata escorted Plaintiff to the police car, frisked him for weapons and drugs, and placed him in the back seat of the car. Recording; see also Second Am. Compl. ¶ 42. After Favata began driving toward Ellis Hospital ("Ellis"), Plaintiff continued to exhibit strange behavior, including loudly counting out loud, waving his hands in the air, and yelling out the styles of houses that the car passed by (e.g., Colonial, Spanish style, etc.). Favata SMF ¶¶ 10-12. Plaintiff told Favata that he could not remember his address, and that he did not know his birth date or what planet he was on. Id. ¶ 13.

Plaintiff disputes this version of events. See generally Dkt. No. 92-1 ("Plaintiff Affidavit"). According to Plaintiff, he was not acting erratically at the restaurant. Id. ¶ 23. He states that one of the restaurant employees accused him of being a rapist, and that he was waiting for the police to arrive in order to clear himself of this allegation. Id. ¶¶ 6, 13. When Favata arrived, Plaintiff "found him to be slow," and so made an attempt to "relate to him" by discussing cars. Id. ¶ 13. Plaintiff states that although he would like to acquire a 1991 Nissan 240 sx, there were not any in the drive-thru line at that time, only a motorcycle. Id. Plaintiff denies offering to buy the

motorcycle, but does appear to acknowledge that an employee stated, "There is a problem at the drive through." Id.  Regarding his behavior while in the police car on the way to Ellis, Plaintiff states that he counted the houses passing by because he was a licensed real estate agent at the time. Id. ¶ 26.

After arriving at Ellis, about two miles from the Wendy's, Favata escorted Plaintiff inside, and Plaintiff was admitted for observation.  Favata SMF ¶¶ 14-15.  Favata completed a Police Officer's Report of Emotionally Disturbed Person Taken to Ellis Hospital Emergency Room.  Dkt. No. 81-14 ("EDP Report"); Favata SMF ¶ 16.  Favata indicated on the form that Plaintiff was transported to Ellis because he appeared mentally ill and was acting in a manner likely to result in serious harm to himself or others.  Id. ¶ 17.

Plaintiff spent a total of nine days in involuntary psychiatric hold in the Ellis psychiatric treatment unit.  Id. ¶ 18.

### 2. June 2008 Incident

On June 26, 2008, Favata was driving on Crane Street in Schenectady.  Id. ¶ 19.  As part of a collaborative effort to create a strong police presence in Schenectady, he was accompanied by New York State Trooper Eric Clouthier ("Clouthier").  Id. ¶ 20.  According to Favata, as a car driving in the opposite direction passed by, he and Clouthier saw that the driver was not wearing a seat belt. Id. ¶¶ 21-22.  Driving without a seat belt is a violation of the New York Vehicle and Traffic Law, and Favata and Clouthier decided to pull the car over and issue a citation to the driver.  Id. ¶ 23; see also N.Y. VEH. & TRAF. LAW § 1229-c(3).

After pulling the car over and approaching it on the driver's side, Favata recognized the driver as Plaintiff based on his previous acquaintance with him in April.  Favata SMF ¶¶ 24-26.

3

Favata states that after he asked Plaintiff for his license and registration, Plaintiff began exhibiting troubling behavior, such as evading questions and speaking in an argumentative tone. Id. ¶ 27. Favata asked Plaintiff to step out of the car. Id. ¶ 28. When Plaintiff got out, Favata observed a knife lying on the driver's seat. Id. ¶ 29. Plaintiff explained that he kept the knife in his pocket and it likely fell out when he got out of the car. Id. ¶ 30. Favata took Plaintiff over to the sidewalk and asked him to sit down. Id. ¶ 31. Favata asked Plaintiff where he was coming from and where he was going. Id. ¶ 32. Meanwhile, Clouthier wrote out a traffic ticket for failure to wear a seat belt while operating a motor vehicle. Id. ¶ 33. Plaintiff was detained only for the amount of time it took to fill out the ticket, after which he was issued the ticket and allowed to leave in his car. Id. ¶¶ 34-35. Plaintiff pleaded guilty to the violation on or about August 11, 2008. Id. ¶ 36.

According to Plaintiff, on June 26, 2008, he drove to a property his family owned on Crane Street. Pl. Aff. ¶¶ 27-28. He was wearing his seat belt until he pulled up to the address, at which point he "took off [his] ignition, took the keys out of the ignition, and put the radio on." Id. ¶ 28. He became scared when he realized Favata was "the officer to come up behind, with flashing lights." Id. ¶ 29. Favata asked Plaintiff to step out of the car, and at some point mentioned searching the vehicle. Id. Plaintiff was then handcuffed and questioned, including as to what medications the hospital had given him. Id. ¶ 30. Favata took Plaintiff's pocket knife, and Favata and Clouthier only left after hearing gunshots fired. Id. ¶ 30.

### B. State Defendants

#### 1. Murphy

Plaintiff was a student at the State University of New York at Albany ("UAlbany") during the Fall 2008 semester. Dkt. Nos. 83-1 ("State Defendants SMF") ¶ 1; 92-2 ("Response to State

Defendants SMF") ¶ 1.  On October 21, 2008, a Professor reported that on October 20, 2008, Plaintiff had assaulted a student who was disabled and used a wheelchair.[1]  State Defs. SMF ¶ 2; Dkt. No. 83-4 ("Murphy Declaration") ¶ 6.  Plaintiff was given notice that his conduct violated UAlbany's Community Rights and Responsibilities ("CRR").  State Defs. SMF ¶ 4.  A Student Conduct Hearing was held on November 18, 2008, after which Plaintiff was found guilty of threatening and abusive behavior in violation of the CRR and sentenced to disciplinary dismissal.  State Defs. SMF ¶ 8; Resp. State Defs. SMF ¶¶ 6, 8.  Plaintiff was notified of the outcome and his right to appeal on or about November 24, 2008.  State Defs. SMF ¶ 9.

On December 5, 2008, Plaintiff met with Murphy, the Associate Vice President for Student Success at UAlbany, regarding the criteria for appealing the disciplinary determination.  Id. ¶¶ 10-11; Resp. State Defs. SMF ¶¶ 10-11.  On December 9, 2008, Plaintiff met with Murphy and Assistant Vice President of Student Success Clarence McNeil regarding his appeal.  State Defs. SMF ¶ 12; Resp. State Defs. SMF ¶ 12.  Plaintiff went to Murphy's office again on December 10 to discuss his appeal.[2]  Id. ¶ 13.  During the December 10 meeting, Murphy felt that Plaintiff's coherence had declined dramatically since the December 5 meeting.  Id. ¶ 14.  Murphy asked Plaintiff if he had ever thought of harming himself, and Plaintiff answered that he had, and explained in detail how he might harm himself by jumping off of a bridge into traffic.  Id. ¶¶ 15-16; Pl. Aff. ¶ 48.

Plaintiff denies that he was speaking incoherently and nonsensically at the December 10

---

[1] Plaintiff denies that the student he assaulted was in a wheelchair.  Resp. State Defs. SMF ¶ 2.

[2] Plaintiff appears to dispute this characterization of the subject matter of the December 10 meeting.  See Resp. State Defs. SMF ¶ 13; Pl. Aff. ¶¶ 47-48.

meeting, Resp. Defs. SMF ¶ 14, but admits that he, among other things, told Murphy "I think your [sic] evil," asked Murphy not to call him John because that word means either a toilet or a patron of a prostitute, and described in detail a plan to commit suicide, see generally Pl. Aff. ¶ 28.

Murphy contacted the Capital District Psychiatric Center ("CDPC") Mobile Crisis Team ("MCT"), which conducted its own interview of Plaintiff and determined that he should be taken to the hospital for evaluation. State Defs. SMF ¶¶ 17-18. According to Defendants, Plaintiff voluntarily entered an ambulance and was taken to CDPC. Id. ¶ 19. Plaintiff states that he was confined and transported to CDPC involuntarily. Resp. Defs. SMF ¶ 19; Pl. Aff. ¶ 59.

Murphy denied Plaintiff's appeal of his disciplinary dismissal on December 15, 2008. State Defs. SMF ¶ 20; Resp. State Defs. SMF ¶ 20.

### 2. Tassinari

Tassinari was the attending physician on the night shift at CDPC's Crisis Intervention Unit when Plaintiff arrived. State Defs. SMF ¶ 21; Resp. State Defs. SMF ¶ 21. After preparing a status evaluation, Tassinari recommended that Plaintiff be admitted for care and treatment based on a pattern of bizarre behavior reported by Plaintiff's mother and UAlbany personnel, and the suicide threats reported by Murphy and the MCT. State Defs. SMF ¶ 22. Based on his observations of Plaintiff's symptoms and the MCT's report of detailed suicide and homicide threats, Tassinari believed that Plaintiff was a danger to himself and others. Id. ¶¶ 23-25. Plaintiff maintains that his behavior at the time was normal. Resp. State Defs. SMF ¶ 23.

### 3. Breslow

On December 11, 2008, Breslow was a psychiatrist assigned to the Emergency Crisis Unit at CDPC. State Defs. SMF ¶ 26; Resp. State Defs. SMF ¶ 26. Breslow states that he reviewed the

records of the MCT and Crisis Intervention Unit and interviewed Plaintiff. State Defs. SMF ¶¶ 27-28. Plaintiff denies ever meeting with Breslow. Resp. State Defs. SMF ¶ 28; Pl. Aff. ¶¶ 68-70. Breslow concurred with Tassinari's opinion that Plaintiff was psychotic and suicidal, and felt that Plaintiff needed further inpatient care and treatment for his own safety and for the safety of others. State Defs. SMF ¶ 29. Breslow prepared the paperwork necessary for transferring Plaintiff to Ellis, as there were no inpatient beds available at CDPC. Id. ¶ 30; Resp. State Defs. SMF ¶ 30. Based on an independent evaluation by Ellis staff, Plaintiff was admitted there until on or about December 24, 2008. State Defs. SMF ¶ 32; Resp. State Defs. ¶ 32.

### C. Procedural History

Plaintiff commenced this action on April 11, 2011, alleging a number of federal civil rights and state common law claims against a host of Defendants, including Favata, the State Defendants, and several unidentified Defendants ("Unidentified Defendants"). See generally Compl. On June 23, 2011, Plaintiff requested the issuance of subpoenas in order to ascertain the identities of the Unnamed Defendants. Dkt. No. 24 ("Subpoena Motion"). On February 3, 2012, the Court denied the request without prejudice to renew following the filing of an amended complaint. Feb. 3, 2012 Text Order. Plaintiff filed his Second Amended Complaint on April 24, 2012, Second Am. Compl., but never renewed his Subpoena Motion, see Docket.

Liberally construed, the Second Amended Complaint asserts claims against Favata for: illegal search, false arrest, malicious prosecution, and abuse of process based on the April incident; and illegal seizure, malicious prosecution, and abuse of process based on the June incident. Second Am. Compl. ¶¶ 42-55. It also asserts a failure to train claim against the City of Schenectady (the "City"). Id. ¶ 53. As for the State Defendants, the Second Amended Complaint asserts claims for

unlawful seizure, false imprisonment, malicious prosecution, and abuse of process against Murphy, and false imprisonment, denial of due process, and improper medical treatment against Tassinari and Breslow.  Id. ¶¶ 86-106.  The Court construes Plaintiff's claims as brought under 42 U.S.C. § 1983, which provides a federal cause of action for constitutional violations committed by persons acting "under color of state law."  42 U.S.C. § 1983.  Where applicable, the Court presumes that Plaintiff alleges parallel claims under state law, as well.

The Court dismissed a number of Defendants in Orders dated February 1, 2012, and August 27, 2013, Dkt. Nos. 41; 73, leaving only Favata, the State Defendants, and the Unidentified Defendants, see Docket.  Favata filed his Motion on January 15, 2014, and the State Defendants filed their Motion on January 22, 2014.  Favata Mot.; State Defs. Mot.  Plaintiff filed Responses on April 30, 2014.  Dkt. No. 92.  Favata and the State Defendants each replied.  Dkt. Nos. 97, 99.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the non-moving party will bear the burden of proof on a specific issue at trial, the

moving party may satisfy its own initial burden by demonstrating the absence of evidence in support

of an essential element of the non-moving party's claim.  Id.  If the moving party carries its initial

burden, then the non-moving party bears the burden of demonstrating a genuine issue of material

fact.  Id.  This requires the nonmoving party to do "more than simply show that there is some

metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S.

574, 586 (1986).  At the same time, a court must resolve all ambiguities and draw all reasonable

inferences in favor of the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.

133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir.

1998).  A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding

genuine disputes of fact, "not to deciding them."  Gallo v. Prudential Residential Servs., 22 F.3d

1219, 1224 (2d Cir. 1994).

## IV.    DISCUSSION

### A.  Favata's Motion

#### 1.  April Incident

##### a.  False Arrest

A false arrest claim under the Fourth Amendment has substantially the same elements as a

false arrest claim under New York Law.  Harris v. City of New York, No. 09–CV–3474, 2013 WL

4858333, at *4 (E.D.N.Y. Sept. 10, 2013) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.

1980)).  A false arrest claim requires that a plaintiff show: (1) the defendant intended to confine

him; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and (4) the

confinement was not otherwise privileged.  Bernard v. United States, 25 F.3d 98, 102 (2d Cir.

1994).  "The existence of probable cause to arrest constitutes justification and is a complete defense

to an action for false arrest, whether that action is brought under state law or under § 1983." <u>Jenkins v. City of New York</u>, 478 F.3d 76, 84 (2d Cir. 2007) (internal quotation marks and citation omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996)

Here, Favata asserts that he had probable cause to arrest Plaintiff under New York's Mental Hygiene Law, <u>see</u> Dkt. No. 81-20 at 6-9, which authorizes a police officer to "take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others," N.Y. MENTAL HYG. LAW § 9.41. "Likely to result in serious harm" is defined as "(a) a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself, or (b) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm." <u>Id.</u> § 9.01. The Mental Hygiene Law further provides that a police officer may remove a person detained under § 9.41 to an appropriate hospital or psychiatric emergency program. <u>Id.</u> § 9.41.

In light of Plaintiff's bizarre, erratic behavior directed toward Favata and the Wendy's customers and employees, as well as Plaintiff's statement that he would like to be taken to the hospital,[3] no rational factfinder could determine that Favata lacked probable cause to arrest Plaintiff. <u>See</u> <u>Kerman v. City of New York</u>, 374 F.3d 93, 100 (2d Cir. 2004) (recognizing that "police officers

---

[3] Although Plaintiff denies consenting to being taken to the hospital, Pl. Aff. ¶¶ 20, 34, the audio from the recording submitted by Favata clearly shows that, in response to Favata stating that he can take Plaintiff to the hospital, Plaintiff says "Let's go there," Recording.

often must make instant assessments with regard to a person's mental health and must be accorded considerable latitude as to the judgments they reach").  Furthermore, Plaintiff's continued erratic behavior in the police car on the way to the hospital justified Plaintiff's subsequent admission.  See Sanchez v. Town of Greece, No. 98-CV-6433, 2004 WL 1964505, at *3 (W.D.N.Y. Sept. 1, 2004).  Favata is therefore entitled to summary judgment on Plaintiff's claim for false arrest based on the April 2008 incident.

### b.  Illegal Search

Plaintiff appears to allege that Favata performed an unlawful search when he frisked Plaintiff at the Wendy's.  Second Am. Compl. ¶ 42.  However, "officers may perform searches incident to constitutionally permissible arrests in order to ensure their safety."  Virginia v. Moore, 553 U.S. 164, 176 (2008).  Because, as stated *supra*, Plaintiff's arrest was lawful, Favata was permitted to search Plaintiff incident to that arrest.  Accordingly, Favata is entitled to summary judgment on Plaintiff's claim of illegal search based on the April 2008 incident.

### c.  Malicious Prosecution/Abuse of Process

"The torts of malicious prosecution and abuse of process are closely allied."  Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).  Malicious prosecution concerns the improper issuance of legal process, while abuse of process concerns the improper use of legal process after it has been properly issued.  Id.  Section 1983 provides a federal cause of action for malicious prosecution and abuse of process against state officials, but courts look to state law for the elements of the claims. Id. at 79-80.  "To state a claim under New York law for the tort of malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause

11

for the proceeding; and (4) that the proceeding was instituted with malice." <u>Kinzer v. Jackson</u>, 316 F.3d 139, 143 (2d Cir. 2003).  A showing of probable cause provides a complete defense.  <u>Fulton v. Robinson</u>, 289 F.3d 188, 195 (2d Cir. 2002).

An "abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." <u>Cook</u>, 41 F.3d at 80.  Although probable cause is not an element of an abuse of process claim, a showing of probable cause can provide a defense by establishing "excuse or justification." <u>See, e.g.</u>, <u>Ryan v. Moss</u>, 11-CV-6015P, 2013 WL 956722, at *12 (W.D.N.Y. Mar. 12, 2013); <u>Pierre v. City of New York</u>, 05CV5018, 2007 WL 2403573, at *12 (E.D.N.Y. Aug. 17, 2007).

Plaintiff's claims fail for several reasons.  First, it appears that Plaintiff's arrest was not effected by any "legal process," because Favata arrested Plaintiff without a warrant.  <u>See</u> <u>Singer v. Fulton Cnty. Sheriff</u>, 63 F.3d 110, 117 (2d Cir. 1995) (citing <u>Broughton v. State</u>, 335 N.E.2d 310, 315 (N.Y. 1975) ("The distinction between false imprisonment and malicious prosecution in the area of arrest depends on whether or not the arrest was made pursuant to a warrant.")).  Accordingly, a malicious prosecution claim cannot lie against Favata for his arrest of Plaintiff at the Wendy's.

Second, even if Favata's submission of the EDP Report might constitute the issuance of legal process, and therefore might satisfy the first prong of a malicious prosecution claim, for the reasons stated *supra*, Favata had probable cause to arrest Plaintiff and transport him to Ellis under the Mental Hygiene Law.  Plaintiff's malicious prosecution claim based on the April incident therefore fails.

Third, Plaintiff's abuse of process claim similarly fails because the existence of probable cause to arrest and transport Plaintiff shows that Favata's actions were excused or justified. Finally, Plaintiff has failed to provide any evidence showing that Favata acted with malice or a collateral objective. Accordingly, Favata is entitled to summary judgment on these claims.

### 2. June Incident

### a. Illegal Search and Seizure

The Fourth Amendment protects "persons, houses, papers, and effects" against "unreasonable searches and seizures." U.S. CONST. amend. IV. Accordingly, "'the Fourth Amendment requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity.'" United States v. Wilson, 699 F.3d 235, 242 (2d Cir. 2012) (quoting United States v. Harrison, 606 F.3d 42, 45 (2d Cir. 2010)). A warrant is not required. See, e.g., Whren v. United States, 517 U.S. 806, 819 (1996). "Probable cause to make a stop exists when an officer 'has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the [suspect] has committed or is committing a crime.'" Id. (quoting United States v. Delossantos, 536 F.3d 155, 158-59 (2d Cir. 2008)). "Reasonable suspicion requires 'some minimal level of objective justification' for suspecting criminal activity." United States v. Bristol, 819 F. Supp. 2d 135, 141 (E.D.N.Y. 2011) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Arizona v. Johnson, 555 U.S. 323, 331 (2009).

13

Here, both Favata and Clouthier state that they observed Plaintiff driving a car without wearing a seat belt, giving them probable cause to stop Plaintiff for violating New York Vehicle and Traffic Law § 1229-c.  See Favata Aff. ¶ 27; Dkt No. 81-17 ("Clouthier Affidavit") ¶ 6.  Plaintiff disputes these facts and asserts that the engine was not running when he was sitting in the driver's seat without wearing a seat belt.  Pl. Aff. ¶ 28.  But even if Plaintiff's version of the facts were accepted as true, his false arrest claim would still fail.  New York Vehicle and Traffic Law § 1229-c provides that "[n]o person shall operate a motor vehicle unless such person is restrained by a safety belt."  N.Y. VEH. & TRAF. LAW § 1229-c(3).  "[C]ourts have long recognized that the definition of operation is broader than that of driving."  People v. Prescott, 745 N.E.2d 1000, 1004 (N.Y. 2001).  Accordingly, Favata's observation of Plaintiff behind the driver's seat without wearing a seat belt provided at least reasonable suspicion of unlawful conduct.  See United States v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994).  Plaintiff therefore cannot prevail on his illegal seizure claim based on the initial stop.  Furthermore, because the initial traffic stop was lawful, Favata's order that Plaintiff step out of the car did not violate Plaintiff's Fourth Amendment rights.  See Arizona, 555 U.S. at 331.

Plaintiff also alleges that his Fourth Amendment rights were violated when he was placed in handcuffs.  See Second Am. Compl. ¶ 50.  Favata and Clouthier both assert in affidavits that Plaintiff was never handcuffed, Favata Aff. ¶ 38; Clouthier Aff. ¶ 13, and Plaintiff has not provided any evidence corroborating his claim.  However, even if Plaintiff's account were proved true, his handcuffing was not unlawful.  Although use of handcuffs are not ordinarily part of a traffic stop, it may be reasonable where the officer suspects the target of the stop to be armed and dangerous.  See United States v. Clark, 552 F. App'x 40, 40 (2d Cir. 2014) (citing United States v. Vargas, 369 F.3d

14

98, 101 (2d Cir. 2004)).  Favata asserts that Plaintiff was behaving erratically, and Plaintiff does not dispute that Favata discovered a pocket knife on the driver's seat.  See Favata Aff. ¶¶ 33, 35; Pl. Aff. ¶ 30; Dkt. No. 92-3 ¶ 29.  Accordingly, handcuffing Plaintiff for the duration of the several-minute-long traffic stop was not objectively unreasonable under the circumstances, and Favata is entitled to summary judgment on Plaintiff's unlawful search and seizure claim.

<b>b.</b> <u>Malicious Prosecution/Abuse of Process</u>

Liberally construed, the Second Amended Complaint alleges abuse of process and malicious prosecution based on the June incident.  Second Am. Compl. ¶ 53.  However, "issuance of a traffic ticket or court summons alone does not constitute a seizure under the Fourth Amendment for the purposes of establishing a . . . malicious prosecution claim."  <u>Peruta v. City of Hartford</u>, 09-CV-1946, 2012 WL 3656366, at *19 (D. Conn. Aug. 24, 2012) (citing <u>Burg v. Gosselin</u>, 591 F.3d 95, 98 (2d Cir. 2010)).  Furthermore, Plaintiff's subsequent guilty plea means that the allegedly malicious prosecution did not terminate in Plaintiff's favor, thereby defeating his malicious prosecution claim. <u>See</u> <u>Kinzer</u>, 316 F.3d at 143.  To the extent the issuance of a traffic ticket might support an abuse of process claim, the existence of reasonable suspicion to believe that Plaintiff was driving without a seat belt provides a defense of justification.  Favata is therefore entitled to summary judgment on these claims.

<i>3.  Failure to Train</i>

Plaintiff alleges that Favata was "improperly trained," Second Am. Compl. ¶ 53, which the Court construes as a claim against the City under <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978).  As stated <i>supra</i>, Plaintiff suffered no violation of his constitutional rights by Favata, and so there is no basis for imposing liability on the City.  <u>See</u> <u>Bobolakis v. DiPietrantonio</u>, 523 F. App'x

15

85, 87 (2d Cir. 2013) (citing <u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006)).

### 4. State Law Claims

To the extent Plaintiff seeks to bring parallel state common law claims against Favata in addition to his federal claims, the Court declines exercising jurisdiction over them because all related federal claims are dismissed.  <u>See</u> 28 U.S.C. § 1367(c)(3).  Plaintiff's parallel state law claims are therefore dismissed.

### B. State Defendants' Motion

### 1. Murphy

#### a. Unlawful Seizure and False Imprisonment

Plaintiff alleges unlawful seizure and false imprisonment against Murphy based on his alleged arrest at Murphy's office and subsequent involuntary transfer to CDPC.  <u>See</u> Second Am. Compl. ¶¶ 86-89.  However, only the members of the MCT were involved in Plaintiff's allegedly involuntary detention and transportation to CDPC.[4]  <u>See</u> State Defs. SMF ¶¶ 18-19; Dkt. No. 83-4 ¶ 18.  Murphy merely called the MCT.  State Defs. SMF ¶ 17.  Because "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," <u>Williams v. Smith</u>, 781 F.2d 319, 323 (2d Cir. 1986), Murphy cannot be held liable for any allegedly unlawful seizure committed by the MCT.

Additionally, Murphy was not personally involved in Plaintiff's alleged false imprisonment at CDPC and Ellis, which was based on the independent determinations of the staff at those facilities.  <u>See</u> State Defs. SMF ¶¶ 25, 29-31.

---

[4] The State Defendants assert that Plaintiff voluntarily entered the ambulance that took him to CDPC.  State Defs. SMF ¶ 19.

b. Malicious Prosecution and Abuse of Process

Plaintiff also alleges that, by setting in motion the events that led to Plaintiff's involuntary commitment, Murphy is liable for malicious prosecution and abuse of process. See Second Am. Compl. ¶ 90. Both causes of action require a plaintiff to show that the defendant acted with an ulterior, improper motive. See Cook, 41 F.3d at 79-80. Aside from Plaintiff's conclusory and largely incoherent allegations that Murphy acted "in bad faith" and "intended to confine" Plaintiff, Second Am. Compl. ¶ 79; Pl. Aff. ¶¶ 44-61, Plaintiff has not provided any evidence of malicious intent or improper motive on the part of Murphy. Accordingly, no rational factfinder could determine that Murphy acted with malice or a collateral motive in communicating with the MCT, and summary judgment is appropriate on these claims.

*2. Breslow and Tassinari*

a. Denial of Due Process and False Imprisonment

A § 1983 action based upon involuntary civil commitment for psychiatric evaluation raises two potential constitutional issues: the right to due process under the Fourteenth Amendment, see Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995), and a person's Fourth Amendment right against unreasonable seizure. See Glass v. Mayas, 984 F.2d 55, 58 (2d Cir. 1993).

Involuntary commitment is a "massive curtailment of liberty" and, therefore, is not permissible without due process of law. Vitek v. Jones, 445 U.S. 480, 491-92 (1980). "Substantive due process prohibits states from involuntarily committing nondangerous mentally ill individuals." Bolmer v. Oliveira, 594 F.3d 134, 142 (2d Cir. 2010) (citing O'Connor v. Donaldson, 422 U.S. 563, 575-76 (1975)). "Involuntary commitment is constitutional if the person is both mentally ill and a

17

danger to himself or others." Jelich v. Hogan, No. 09 Civ. 3278, 2009 WL 3497495, at *2

(E.D.N.Y. Oct. 27, 2009) (citing Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir.

1995)).

Pursuant to New York's Mental Hygiene Law, a patient may be involuntarily committed to a

psychiatric facility on an emergency basis if he (1) has a mental illness for which "immediate

observation, care, and treatment in a hospital is appropriate," and (2) "which is likely to result in

serious harm" to himself or others.  N.Y. MENTAL HYG. LAW § 9.39.  The patient can be admitted

for treatment "upon the certificates of two examining physicians, accompanied by an application for

admission." Id. § 9.27; see also id. § 9.37(a).  Because New York's statutory civil commitment

scheme requires a showing of dangerousness prior to commitment, it has long been held

constitutional.  See, e.g. Project Release v. Prevost, 722 F.2d 960, 973-74 (2d Cir. 1983); Mittelman

v. Cnty. of Rockland, 07-CV-6382, 2013 WL 1248623, at *23 (S.D.N.Y. Mar. 26, 2013).  Courts

routinely grant summary judgment where there is no indication that the defendants' decision to

involuntarily commit a plaintiff "fell substantially below medical standards." Mittelman, 2013 WL

1248623, at *25 (collecting cases).

A plaintiff alleging false imprisonment under the Fourth Amendment must show that: "(1)

defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff

did not consent to the confinement; and (4) the confinement was not otherwise privileged."

Rubenstein v. Benedictine Hosp., 790 F. Supp. 396, 409 (N.D.N.Y. 1992) (citing Parvi v. Kingston,

362 N.E.2d 960, 962 (N.Y. 1977).  Where an individual is confined based on probable cause to

believe that the person is subject to involuntary commitment pursuant to the Mental Hygiene Law,

the confinement is privileged.  See Glass, 984 F.2d at 58; Mittelman, 2013 WL 1248623, at *29.

18

Here, it is undisputed that Plaintiff made suicidal and threatening statements to Murphy and the MCT. See State Defs. SMF ¶¶ 15-16; Pl. Aff. ¶¶ 48, 55. Based on reports of these statements, reports of alarming behavior by Plaintiff's parents, and a personal examination of Plaintiff, Tassinari concluded that Plaintiff presented a risk to himself and to others. Dkt. No. 83-5 ¶¶ 4-12. Plaintiff has provided no evidence showing that Tassinari's decision fell substantially below medical standards, or that Tassinari lacked probable cause to recommend commitment under the Mental Hygiene Law. Accordingly, Tassinari's decision to recommend inpatient treatment satisfied all constitutional requirements. See Jelich, 2009 WL 3497495, at *2.

In determining that Plaintiff required inpatient treatment because he was a danger to himself and others, Breslow also relied on records of Plaintiff's suicidal statements, and on a personal examination. Dkt. No. 83-6 ("Breslow Affidavit") ¶¶ 3-7. Plaintiff states that he does not recall being interviewed by Breslow. Pl. Aff. ¶ 68. However, to defeat a motion for summary judgement, a plaintiff must show more than some metaphysical doubt as to the material facts. See Matsushita Elec. Indus., 475 U.S. at 586. Here, Plaintiff has not done so. The record contains a sworn statement from Breslow describing in detail his examination of Plaintiff, as well as an application for involuntary admission certificate completed and signed by Breslow. See generally Breslow Aff.; id., Ex. B. Based on this evidence, no rational factfinder could determine that Plaintiff's involuntary commitment was contrary to the requirements of the Mental Hygiene Law. Accordingly, Plaintiff cannot show that Breslow's recommendation of continued commitment violated Plaintiff's due process or Fourth Amendment rights.

b. Improper Medical Treatment

Plaintiff alleges that Tassinari and Breslow "had a duty of care to Plaintiff," which they

breached, resulting in "improper medical treatment."  Second Am. Compl. ¶ 105.  To the extent Plaintiff is alleging that Tassinari and Breslow violated his constitutional rights by improperly recommending his involuntary confinement, his claim fails for the reasons stated *supra*.  To the extent Plaintiff is alleging that they violated his constitutional rights by providing negligent medical care, his claim fails because "negligence is insufficient as a matter of law to state a claim under section 1983."  Poe v. Leonard, 282 F.3d 123, 145 (2d Cir. 2002) (citing Davidson v. Cannon, 474 U.S. 344, 347-48 (1986)).  Accordingly, Tassinari and Breslow are entitled to summary judgment on Plaintiff's claim for improper medical treatment.

### 3.  State Law Claims

To the extent Plaintiff seeks to bring parallel state common law claims against the State Defendants in addition to his federal claims, the Court declines exercising jurisdiction over them because all federal claims are dismissed.  See 28 U.S.C. § 1367(c)(3).  Plaintiff's parallel state law claims are therefore dismissed.

## C.  Unidentified Defendants

Having granted Favata and the State Defendants' Motions for summary judgment, the only remaining Defendants in this action are several individuals who have not been identified by Plaintiff.  See Docket; Second Am. Compl. ¶¶ 31-32.  This action has been pending for over three years, providing Plaintiff with ample time to identify and name these individuals.  Because Plaintiff has provided no explanation for his failure to do so, dismissal of Plaintiff's claims against the Unidentified Defendants is appropriate at this time.  See, e.g., Coward v. Town & Vill. of Harrison, 665 F. Supp. 2d 281, 301-02 (S.D.N.Y. 2009).

**V.    CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendant John Favata's Motion (Dkt. No. 81) for summary judgment is

**GRANTED**; and it is further

**ORDERED**, that Defendants John Murphy, Robin Tassinari, and Richard Breslow's Motion

(Dkt. No. 83) for summary judgment is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's claims against Unidentified Defendants John Does 1-10 and

Jane Does 1-10 are **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on the parties to this action in accordance with the Local Rules.

**IT IS SO ORDERED.**


Dated:        July 23, 2014
              Albany, NY


Lawrence E. Kahn
U.S. District Judge

21